UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00068-JRS-MG |
| | ) | |
| LAMONE LAUDERDALE, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## Order on Motion to Suppress

### I.   Introduction

Lamone Lauderdale is charged with various drug and gun crimes resulting from a January 19, 2022, police encounter that began with a traffic stop. Now before the Court is Lauderdale's Motion to Suppress, (ECF No. 40), in which he argues that the traffic stop was unlawfully initiated and that the stop was unlawfully prolonged while the police readied a K-9 search of the vehicle.

### II.   Discussion

#### A.  Traffic Stop

"[R]easonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). The government "bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *Id.* (citing *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014)). And because reasonable suspicion is judged according to an objective standard, "[t]he officer's subjective motivations for stopping

and detaining a suspect are not relevant to the reasonableness inquiry." *Id.* at 358 (quoting *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011)).

Here, the detaining officer Stutesman reasonably suspected a traffic violation: he says he saw Lauderdale driving about 60 mph in a 45 mph zone. (Prob. Cause Aff. 4, ECF No. 41-1.) That sworn assertion is well-corroborated by the other evidence: on the body-cam footage of the stop, Stutesman tells Lauderdale he was going more than 60 mph and Lauderdale apologizes for speeding, (Body-cam Stutesman 1:56-2:02, ECF No. 48); and in a recorded phone call from jail, Lauderdale says he "may have sped up a little bit" when the police approached, (Lauderdale Jail Call, 7:10-7:14, ECF No. 48).

Lauderdale argues that police were only looking for him in the first place because of an uncorroborated anonymous tip alleging reckless driving, (Def.'s Br. Supp. 3, ECF No. 41), but the tip is irrelevant: Stutesman had independent grounds sufficient to support the stop. Lauderdale also argues that there is no video evidence of him speeding, nor any radar gun evidence that would establish his real speed. (*Id.*) But without evidence of his own, mere quibbling with the government's evidence is not enough; Lauderdale needs to "present 'definite, specific, detailed, and nonconjectural' facts that justify relief," *United States v. Edgeworth*, 889 F.3d 350, 353–54 (7th Cir. 2018) (quoting *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)). He has introduced no evidence, and nowhere does he assert that he was not in fact speeding. In any case, an officer's "estimation" of a traffic violation is enough for reasonable suspicion. *United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021), *cert. denied*, 142

S. Ct. 1420 (2022) (quoting *United States v. Muriel*, 418 F.3d 720, 722 (7th Cir. 2005)). On the record evidence, the officer's initial traffic stop was lawful.

      B.  Dog Sniff

The legal standard for traffic stops and K-9 drug searches is clear:

> A traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket. It is well-established a dog sniff of a vehicle's exterior only for illegal drugs during a lawful stop for a traffic violation does not infringe Fourth Amendment rights, even absent reasonable suspicion of drugs. But it is also well-established a stop justified only by a traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the stop's original mission. . . . Absent independent reasonable suspicion to justify the sniff, the critical question is not whether the sniff occurs before or after the officer issues the warning, but whether conducting the sniff "prolongs"—i.e., adds time to—the stop.

*United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019) (quoting *Rodriguez v. United States*, 135 S. Ct. 1609 (2015) and *Illinois v. Caballes*, 543 U.S. 405 (2005)) (cleaned up).

Here, the sniff did not prolong the stop: at no point did the police stop working on writing a ticket, and the sniff revealed drugs before the ticket was complete. Stutesman's body-cam shows that he discussed the traffic stop with Lauderdale and announced his intent to let him off with a warning for speeding. (Body-cam Stutesman 2:02-3:06-3:19, ECF No. 48.) Stutesman then went back to his squad car to process the ticket, (*id.* 3:19-3:29); he worked on the ticket for about four minutes and ten seconds, (*id.* 3:29-7:40), during which time he is seen scanning Lauderdale's license, entering information from the vehicle registration, and scrolling through records on the onboard computer. A backup officer arrived, and Stutesman instructed

3

him to take over work on the ticket. (*Id.* 7:40-7:55.) While that officer worked on the ticket, (Body-cam Musgraves 0:14-3:58), Stutesman prepared and conducted the dog sniff of Lauderdale's vehicle. The dog alerted to drugs almost immediately upon approaching the vehicle. (Body-cam Stutesman 10:18-10:33, ECF No. 48.) The backup officer was still working on the ticket. (Body-cam Musgraves 3:05.) So even if Stutesman had not done the drug sniff, at that point Lauderdale would still have been detained—the drug sniff did not "prolong" the stop.[1]

That conclusion is consistent with precedent applying the same rule. In *Rodriguez v. United States*, 575 U.S. 348, 352 (2015), the police had finished writing a warning ticket, but nonetheless detained two men for an extra seven or eight minutes waiting for backup and a drug sniff. That extended stop was unlawful. *Id.* at 357. In *United States v. Gholston*, 1 F.4th 492, 498 (7th Cir. 2021), *reh'g denied* (July 29, 2021), *cert. denied*, 142 S. Ct. 1421 (2022), the police detained a man on a pretextual stop, took eight minutes to issue a first ticket, all the while urging backup to hurry, issued that ticket, then began work on a second ticket, the grounds for which was discovered only

---

[1] Lauderdale argues that the stop was prolonged by an equipment malfunction, but the equipment malfunction was related to the ticket-processing "mission" of the traffic stop, so it cannot be held impermissibly to prolong the stop. *Cole*, 21 F.4th at 429; *see also Gholston*, 1 F.4th at 497 (7th Cir. 2021) (affirming district court's finding that "the need to enter Gholston's ID information manually [did not] add[] any appreciable time to the stop."). To the extent that Lauderdale alleges that the equipment did not actually malfunction and the officers invented the explanation as a ruse, the Court need not credit it: Lauderdale "bears the burden of making a prima facie showing of illegality," which requires "definite, specific, detailed, and nonconjectural facts," not mere "vague, conclusory allegations" *Edgeworth*, 889 F.3d at 354 (7th Cir. 2018) (citations omitted). The officers testified to an equipment malfunction, and the body-cam video shows the scanner rejecting the license and the officer reacting (Body-cam Stutesman 3:59, ECF No. 48 ("Oh, shoot.")). Lauderdale's bare allegation is a wild theory, and he proffers no evidence that supports it now or would support it at a hearing.

after the first was complete. *Id.* at 496. Backup arrived and the drug sniff alerted to drugs while the second ticket was printing. *Id.* at 497. The Seventh Circuit affirmed the district court's finding that the stop was not prolonged to conduct the drug sniff. *Id.* at 498 ("This is not a case in which an officer completes the activities for a stop and then detains the suspect longer in order to allow time for a K9 officer to arrive."). In *United States v. Goodwill*, 24 F.4th 612, 614 (7th Cir. 2022), the police stopped a man, and began working on a ticket. Ten minutes after the stop began, while the ticket was still in progress, a K9 unit arrived, conducted a drug sniff, and alerted to drugs. *Id.* The Seventh Circuit affirmed the district court's finding that the stop was not prolonged. *Id.* at 617. ("There is nothing suggesting that simply spitting or looking up while engaged in this process unconstitutionally extends a stop."). Here, the facts are more like *Goodwill* than *Gholston* or *Rodriguez*: the police worked diligently on a single ticket, without mistakes or delays, and a drug sniff alerted to drugs about ten minutes into the stop, before the ticket was issued.

## III.   Conclusion

The officer had reasonable suspicion of a traffic violation sufficient to support the stop; the stop was not prolonged by the dog sniff;[2] and no argument or evidence Lauderdale could present at a hearing is sufficient to change those conclusions.

---

[2] The government does not argue, and the Court need not address, whether the officer had independent reasonable suspicion that would have supported prolonging the traffic stop. Here, the officer observed Lauderdale's nervousness, and the background search of his license may have revealed prior drug offenses. *See Lewis*, 920 F.3d at 493 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)) ("Nervousness can raise reasonable suspicion."); *id.* (citing *United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015)) ("Criminal histories can support reasonable suspicion.").

Therefore, no evidentiary hearing will be held, and Lauderdale's Motion to Suppress, (ECF No. 40), is **denied.**

**SO ORDERED.**

Date: 04/07/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan A. Bont
Frost Brown Todd LLP
jbont@fbtlaw.com

Abhishek Kambli
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
abhishek.kambli@usdoj.gov